Good morning. The first case this morning is 08-5181 Honeywell International v. United States. Mr. Butts. Good morning, your honors. May it please the court. I plan to focus my argument on two issues, obviousness and written description. And turning first to the obviousness issue, I want to make essentially two points. The first relates to the failure of any of the prior art to teach the perceptible narrow band of the red color band or perceptible narrow band concept that is fundamental to the invention. And the second relates to the compelling direct evidence establishing that the entire industry intensely focused on the NVG red issue was unable to resolve that problem prior to Mr. Cohen's invention. Okay, so why don't we jump right to Boehm and the figure, the magic bell curve, which shows a little tiny bit of red wavelength that, well, I don't know if it's a little tiny bit, but a portion of red wavelength that's going to actually get through the filter. Right. And, your honor, then that's in figure three, the fourth figure in figure three. This is a filter transmission. This does not show the light that gets transmitted. In order to know the light that gets transmitted, we need to know the light source. And the light gets attenuated after that. The page is in the appendix. Do you have a page? Yes, it is, your honors. Joint appendix 605291, which is probably in volume two. Got it. Okay. So, this tells you nothing about what light makes it through the display. And, in fact, it tells you certainly nothing about whether that light would be perceptible, which is, after all, the whole purpose of the invention is to get red that can be seen. Back up for one second. It tells you nothing about what light makes it through the display. I thought that this indicated, and I didn't think there was a dispute, that this meant that some portion of the wavelengths were getting through. I thought your dispute was that they weren't perceptible. They weren't visible to a person wearing the night vision goggles. Well, two issues. There certainly was no evidence of perceptibility. That's for sure. Okay. Second, without even knowing what light is put behind that filter, you don't really know what comes through at all. It's much like if I handed your honor a pair of sunglasses and didn't tell you where we were going to go, say, is it bright or is it dark? If you were in a dark movie theater, perhaps no light comes through, but it depends on the light source. But, regardless, you'd have to quantify that light source to know whether perceptible red makes it through the filter. And that gets to the heart of the problem with the CFC's analysis, because the CFC never analyzed whether or not perceptible light makes it through with BEM, Verney, or any of the other prior art of record. And certainly that wasn't the intent of those references. The intent there was to minimize light and only permit either no red light or sufficient red light that it would not interfere with the NVGs, night vision goggles. And one thing we know from Mr. Tannis' testimony, that's Honeywell's expert, that any light that wouldn't interfere with the NVGs most certainly wouldn't be perceptible. Let me ask you about Verney. As I recall, the CFC says that you don't dispute that Verney discloses claim 23A. Yes, that's wrong. It was hotly disputed throughout the briefing, and it does not disclose 283, because Verney doesn't disclose perceptible light, as we pointed out. It's got a filter, and again, filters don't… It doesn't disclose perceptible light. Is it because of the dimming? You're saying it doesn't block at dims, right? Is that your interpretation of that piece of prior art? I think it very, very clearly… That's correct. It very dims, and we know that it dims because it's viewed through the NVGs. And any light that could be seen through the NVGs without blooming it most certainly wouldn't be perceptible, as Tannis testified. So you think it dims it so sufficiently that it can't be seen? I think there's no doubt about that, and frankly, there was no counter-evidence to that at trial. Tannis' testimony on that issue was at Joint Appendix 622958. So in any event, Verney does dim, and dimming is not optional. Verney talks about two situations with red lights. It says one is the filtering and dimming, and the other is when you can't use a filter, it's dimming alone. But in each instance, it makes it clear that the red light is being perceived through the goggles, and consequently, there's no way that light would be perceptible. There certainly was no evidence and no clear and convincing evidence that it would be perceptible. In fact, there was no effort to put on evidence whatsoever. Verney isn't trying to pass perceptible red light. He's got a different paradigm entirely, where he's trying to say, instead of seeing the red light outside of the goggles, you're going to look at it inside the goggles. That's counter to the invention. The invention is trying to permit naked-eye perceptible red light in the cockpit, not seeing it through the goggles, and that's why it doesn't show that. So we do hotly dispute that Verney discloses a perceptible narrow band of the red color. If we were to agree with you on the obviousness and or written description, where does that leave the case? What's left of this case? Also, assuming the Secrecy Act, we were to agree with you on the Secrecy Act issue. Damages have already been tried on the case, but the court would then have to put the record down. The court would be reimbanded for damages by the court. There are also, in this case, we went with designated displays with the idea that we would get the case resolved, so there would be a further proceeding at some point in time to analyze whether or not there are other displays in the government that the government has used that would infringe the patent as well. What about the first sale question? Where are we left with that? The first sale issue simply affects one category of units, which are the Lockheed Martin L3 units for the C-130J. I don't believe it affects, I'm sorry, the CMFD, the Honeywell units. I think it's a small category of the total number of units. So the perceptible, there was no evidence. Let me ask you one more obviousness question, and then I'll let you move on to written description. The last one I have for you is, okay, suppose I agree with you that Bohm and Verney neither disclosed 2A3. Did the government make arguments or present evidence in the form of testimony that even if no reference discloses 2A3, it's nonetheless obvious from the cumulative other references in their teachings, or because one of skill in the art would know to do it because of X, Y, or Z? Yes. No witness testified that the perceptible narrow band or the red color band was known, or common knowledge, or otherwise understood. What the defendant's witnesses did testify to is that this would be some sort of known tradeoff to apply complementary filtering to a full-color display, and so consequently somehow you must get there. But that actually doesn't go far enough because we know complementary filtering can be applied in a number of ways to a full-color display. In fact, we know that when Dr. Reitz applied complementary filtering in the TA7C jet to a full-color display, he applied it to take all the red out so that the red turned black. So that's not enough. There has to be some teaching that says you, those skilled in the art, would have known to go to the perceptible narrow band or the red color band, and we know from the other evidence in the case, the direct evidence in the case, that wasn't known. How do we know that? Well, first of all, in the case of Dr. Reitz, he testified at trial that he was told by the jet pilots, keep red no matter what. We need to have red. We know from Dr. Task, their expert who also was at the Air Force working on these specs at the time, that he went to Dr. Reitz and said, keep red if at all possible. This wasn't an option. This was not some unimportant fact. Red was critical to jet pilots. Nevertheless, when Dr. Reitz came up with the spec in January of 1986, he took red out, and there's no explanation for that other than the fact that he didn't know how to apply the narrow band or the red color band concept. The CFC has made some arguments and assertions that perhaps that was because there was a daylight readability problem with full-color displays, but that would be irrelevant to the notion of taking out red in caution warning lights. This is a life or death matter for jet pilots. The CFC said that another possibility is helicopter pilots were demanding maximum sensitivity and were willing to sacrifice red. Well, the problem there is this spec applied to jet pilots and to helicopter pilots, and it took red out for everybody. Now, after they knew about Cohen's invention, the new spec in 88 provided two options. It had a red option and a lower option. Helicopter pilots could use whatever they want, but they got the red option. But they didn't put that in in January of 86, and there's no good reason. The only one good reason, and that is they didn't understand that was a possibility. So we... I'm going to move on to written description now for the most convenient time for you. Go ahead. Thank you. With written description, am I understanding your argument to be that the lower court limited the original or the application in this case, the patent in this case, to CRTs and said the written description didn't offer support for other types of displays? Where do you think the support exists? I think that there's... The court could look, frankly, at original claim one of the original application alone and dispose of the written description issue. That's self-describing. An original claim one was written to cover a local source of light in the singular, which comprises distinct monochromatic color generators. It doesn't require CRTs, and it doesn't require separate display devices. In fact, we know that because when you get to dependent claim four, original dependent claim four, that claim expressly recites tube CRTs and multiple devices. It's a pure claim differentiation type issue. We know the inventor conceptualized his invention and was in possession of something broader than multiple CRTs. The patent, the specification likewise talks about other transducers and ambient light sources and the like, but you don't even need to go that far because you can get it straight from the original claim, which itself is self-describing. The CSC failed to give deference to the examiner's analysis of the written description issue or of the support issue, but the examiner looked at the new specification and even gave instructions to the applicant as to how to make the changes. And nevertheless, it was permitted and the CSC never addressed, by the way, original claims one and four with regard to their recitation of a singular local source of light, which is exactly the same terminology that appears in issued patent claims two. So for that reason, we believe there's critical evidence that the CSC overlooked on written description, and we believe that original claim one itself can be dispositive of the notion of what did the inventor possess as his invention. He clearly, if he had thought his invention was single or multiple CRTs only, claim one would have been claim four, but he presented a broader claim, claim one, which showed the inventor possessed something broader than purely multiple CRTs. So in summary, we believe there is undisputed evidence that... Why did he revise it later to show the single source? Well, I believe later the claim was the figure was brought out, was added later to reflect what was actually in claim one, a local source of light, which was not specific to a particular CRT, and the light sources. However, there's no doubt that you could read the original, the actual claim two, on the original specification as well, as was shown in the blue brief with Tanis' exhibit at trial. So we don't believe there's any evidence of a perceptible narrow band of the red color band in the prior art. That's, as a matter of law, should compel a finding of non-obviousness. In any event, the direct and compelling real-world evidence shows that far from a mere trade-off, this was something that wasn't understood and wasn't appreciated, and there's simply no credible explanation on the undisputed underlying facts for why a narrow band of the red color band wasn't included at the outset. Thank you. Thank you. Mr. Crumbly first? Yes, Your Honor. And you've divided your time, I see. That's correct, Your Honor. Thank you, Your Honors. Good morning, and may it please the Court. As Honeywell's briefs and the argument here today show, Honeywell asks this Court to ignore the clear factual findings below and to sit in place of the trial court as the trier of fact. That's not the province of this Court, and the Court's factual findings are subject to clear review. I'd like to first turn to obviousness. As KSR notes, the combination of familiar elements according to a known method is likely to be obvious when it does no more than achieve predictable results. Can you turn to BOEM for a moment? Absolutely, Your Honor. In the context of that reference, what does incandescent lighting mean? Incandescent lighting is like the old-style Edison light bulb is an incandescent light. But in the context of BOEM, it's not coextensive with the display, is it? No, Your Honor. And so I guess the heart of my question goes to how I'm having a hard time seeing how BOEM teaches anything relevant to filtering red light at the display, which is what the invention is about. Well, Your Honor, BOEM actually specifically teaches the use of a multifunction display, a color multifunction display. That is at JA605308. There's a discussion of the use of color multifunction display, and it says that the NVGs were successfully tested with these color MFDs, which is a multifunction display. I'm sorry, I'm on 308. What are you reading? Let me find the exact line there. Down towards the bottom of the page, the second-to-last paragraph, NVGs were... In the conclusion. Yes, Your Honor. I just want to make sure. NVGs were successfully tested with a color MFD. HDD is an abbreviation for head-down display, and a CGI simulator. Again... And what is it you want us to take away from that? Well, Your Honor, clearly BOEM anticipates the use of both incandescent lighting as well as a display, like a multifunction display, a color multifunction display. BOEM is not limited to only incandescent lighting. There's no dispute in this case, Your Honors, that the 1914 patent did not invent NVGs. It did not invent full-color displays, nor did it invent any new kind of filter. Where does BOEM disclose perceptible red light? Because this case is all about perceptible red light, red light that's going to be able to be viewed through those goggles. So where does BOEM disclose that? Well, Your Honor, that's actually... We take issue with that interpretation. Let's assume I find that interpretation to be the correct one. Where does BOEM disclose that? Or if they don't, does that make the end of your argument? No, it doesn't at all, Your Honor. The transmission of the filter, the VG7 filter, clearly shows that light above 620 nanometers within the red color band would be emitted through. Honeywell's argument is essentially that one of ordinary skill would be unable to pair that with a light source that brings perceptible light through, basically reduces the person of ordinary skill total. Because on the bell curve, it's so far down the curve, right? Isn't that why it's not sort of at the peak? It's all the way sort of at the bottom. It's the low end. I mean, I'm looking again at the famous figure number three. Right. You know, you look at that bell curve, and you draw a line because you've got the relative luminescence is the vertical axis. So then you look across to where that perceptible red light would be, which is somewhere between 0.6 and 0.7, not too far from 0.6 is where it would start. It would carry on out. But given where that is relative to the y-axis, I mean, isn't that a really compelling argument that it's not going to produce perceptible red light? And that's what their expert testified to. And I just couldn't find a single thing and not a single piece of evidence anywhere from the government that this, in fact, would be perceptible. Well, Your Honor, again, I think it needs to be said that at the infringement stage of this case, the government put forward evidence that the accused devices did not have a perceptible red color band. Honeywell rejected that and said that there's no sufficiency requirement in these claims. There's only a requirement that there be some light in the red color band. That was not our position, but that was Honeywell's position that the court adopted and was necessary for the finding of infringement in this case. To now turn around and for them to argue that, no, the prior art must show a perceptible red color band is completely contrary to what was argued at the infringement stage. Let's assume that I think the claims require perceptible red light since that's the entire point of the invention. So let's assume, just hypothetically, that that's the way I was leaning, that does this demonstrate perceptible or did the government produce any evidence that this prior art demonstrates perceptible red light? Yes, sir. Is that something we review for clearance? Testimony from Mr. Reitz, Dr. Task, supports that the level of skill in the art, this is a very predictable field, so one of ordinary skill in the art would know from this transmission curve, above 620 nanometers, that there is some transmission for this filter. When paired with a light source, if the goal is, you've heard discussion of dimming, if the goal is to get enough light through to be perceptible, one of ordinary skill in the art would know you can turn the light source up and down to achieve a perceptible, if your goal is to get a perceptible light in the red color band, that's clearly within the ordinary skill in the art to achieve that. So you're saying it isn't explicitly disclosed here, but your experts testified that one of skill in the art would know how to do it. Well, not only that, Your Honor, but... I just want to make, no, but this is important. Don't move yet. So yes or no. You're not saying your experts said this graph discloses perceptible red light. You're saying that your experts said that one of skill in the art would know how to put a light source in that would allow this to be perceptible. That's true, Your Honor, but in addition... Is that what the... But you started by talking about the CFC and how we have to defer to the fact finding there for clearer. Is that a finding that the Court of Federal Claims made? Yes, Your Honor. Maybe I'll just finish my point briefly. We discussed incandescent lighting previously. Incandescent lighting, which is disclosed in BAME, transmits exceptional amounts of red and infrared lighting. So as Dr. Tass testified below, when you combine an incandescent light with the filter in BAME, you're going to get some perceptible amount of red light through. Now, again, we take issue, of course, with the fact that there is a perceptibility requirement, but to say that one of ordinary skill in the art would not know how to get a perceptible red light, if, again, if that's the entire goal of the patent, which, again, we don't believe that it is, but if that is the entire goal of the patent, it's clearly within the ordinary skill in the art, such as an icon where you adjust the spring in the prior art to... It was clearly within the ordinary skill in the art. I'm having a lot of trouble with the back story here for you all with regard to obviousness. You guys were going to change all of the helicopters to not have red lights, despite the overwhelming importance of red lights and indicating danger to pilots because of your inability to get them working consistent with the NVG goggles. I mean, I feel like the secondary consideration evidence is truly overwhelming. Well, Your Honor, I think we take issue with that very strongly, that the overwhelming need was for red lighting. One, we need to distinguish red flood lighting from red warning lighting and red display lighting. That's one issue. And even in cockpits today that have red displays, you don't have red flood lighting because it leads to enemy detection. So that's a subsidiary issue that Honeywell continues to bring up, the cost of this that's not relevant. But I think the other point is that, yes, we don't deny that pilots wanted to keep red warning lights. However, they also don't want to run into trees. And so you weigh the need to have as much goggles sensitivity as you can get against the need to have red warning lighting. And the committee determined that at the time, because NVG goggles were being used in helicopters, you wanted to get as much sensitivity out of the goggle as possible. So you put that dividing line in the spectrum biased towards getting more for the goggle and less for the displays in the cockpit. But then how come right after, I don't remember the gentleman's name, but he was exposed to this technology in the course of reviewing it to determine if it's secret, that immediately he had an epiphany and changed the direction that the government was going to go vis-a-vis this red light elimination from the cockpit. I understand that that's Honeywell's position. There's no evidence that that ever occurred in the record. Well, there's evidence that he reviewed the application for secrecy. That is true. There's evidence that he participated in a meeting where the task was changed in very close temporal proximity. Right? Isn't that all accurate? Yes, Your Honor. Just a note, I'm hitting the time, but I do want to answer this because it's a critical point. Mr. McClure, who reviewed the patent, was not a technical person. The technical personnel on the committee, Mr. Reitz, Ms. Briner, Mr. Berg, all three testified that the formula that you used to determine compatibility was all the work of Mr. Reitz and Ms. Briner working together. Mr. McClure was a bureaucrat sitting on this committee. What he did was he collected the inputs of the various agencies, combined them, and then formulated reports, basically. He had no technical input into the development of the standard whatsoever. This testimony is consistent. Honeywell has no evidence to the contrary. All they can put is the patent briefly reviewed by Mr. McClure is part of a secrecy order, which doesn't look at the invention anyway. It looks at the disclosure of what's in the patent application. It doesn't look at what the invention is. Furthermore, we have to note that at the time of Mr. McClure's review, Claim 2 wasn't even in the patent at the time. That didn't come in until they amended the claims in the 2000s. So what Mr. McClure reviewed is not the invention that we're accused of infringing. So it's actually impossible for him to have taken Claim 2 because it didn't exist and bring it over to the spec-setting committee. All right. Well, let's hear from Mr. Harbin now. Thank you, Your Honor. Thank you. May it please the Court. Thank you. Are you addressing different issues or are you planning on going back over the same ones? I would like to elaborate on some of these issues because these are the issues I plan on addressing and I think they're important. And I do think it's important to emphasize the government presented five witnesses who were involved at the time this initial specification was written, this research was done, and their testimony was consistent, both about the ability and the understanding of the patent. The understanding of splitting a filter below red or in the middle of red and the reasons why the initial spec was adopted. And there was no witness who testified to the contrary. It was speculation by Honeywell. The Court made a credibility determination that each one was basically a lifetime government employee. Their testimony was credible and went with that. But I think in the documentary evidence at the time supports it. Let me address those two issues, specifically perceptibility and the issue of why the initial spec was written the way it was. In regard to perceptibility, we would ask if the Court does determine that perceptible red is a requirement, that the Court also reverse the infringement finding on claim two because as the government counsel said, the government posited that that should be the standard and that infringement was not found. The Court rejected that based on Honeywell's testimony. In its definition of color band, didn't the Court incorporate the words perceptible red light? Yes, but in the finding of infringement, the Court cited specifically Mr. Tannis' testimony, Honeywell's expert, that perceptible has nothing to do with this patent. And she cited some experts. She went into great detail. Perceptibility, he claimed, is too objective. But the Court concluded in its claim construction that perceptibility was required in their definition of color band. But in the overall definition, the Court said one color needs to be perceptible, that's all, and rejected the evidence that the allegedly infringing displays were not infringing, citing Mr. Tannis' testimony and that perceptibility doesn't matter and they just have to pass one perceptible color. That's in her infringement finding repeatedly. She said it has to be visible to the human eye, right? Isn't that the language she used? And so you're saying only one color has to pass, meaning it could be something other than red? Right, and that was the point. The infringing displays not pass, it's pinkish orange, it's not red. Honeywell said it doesn't matter and she traveled with it. But let me get to the second point on perceptibility. There is direct evidence regarding the Verney filter. The Court was correct, it does disclose the element 2A3. We put on the graph where the cutoff is virtually identical to the filter and the graph of the filter that Honeywell showed to prove infringement as to the CMFD filter. So it does clearly, and the expert testimony showed it does pass perceptible band to the extent, it passes the same color that the infringing display passes. What expert testimony said it passes, that the Verney reference passes perceptible red light? I'll rephrase it. It passes the same light the infringing display passes, cutting the red band. But more importantly, Your Honor, the evidence is overwhelming again that complementary filtering was well understood. Determining the split point anywhere, including within the middle of the red color band, was well understood. And that this technology did not invent a new filter. Honeywell's expert admitted it can be done with off-the-shelf technology. What he admitted, this is not, I mean there's ample testimony from the government's lay witnesses and experts. But what he, Honeywell's expert admitted, that all the patent discloses over the prior art, the unique part of the patent in his words, is the idea of splitting the red band. Well not only was splitting the red band in the sense of having a complementary filter that cuts the red band in the prior art, but as the court found, he said once you have that idea, those in the art can easily create this invention. And that is consistent. He never claimed, even Honeywell's expert never claimed, well once you have the idea of splitting the red band, you still have to learn how to make it perceptible. That was never Honeywell's position. This is very similar to the Icon case. Moving the color band, moving the splitting point of the filter is like sizing the components in Icon. That's clearly the testimony. In any regard to the... Why did the government change the task then, change the decision to eliminate red light from the cockpits, just shortly after having been exposed to his patent application? Because as this is shown in the contemporary documents, and again all of the witnesses who were involved, the initial standard clearly was developed for helicopters. Honeywell's counsel made a comment that this was a life or death matter. The committee made a decision. The testimony is unequivocal. Many pilots, and it was not all helicopter pilots, there was some input to the committee that some helicopter pilots don't care about a red warning light because they know where it is. What was clear is they're flying under 100 feet off the ground often, at night, covertly, and they want to keep them from hitting a tree. That was their critical goal. They wanted to minimize the impact on the goggles. There is a well-known trade-off. The more you move light into the red band, the more you degrade the goggle performance. The Honeywell patent didn't discover this trade-off, and despite their arguments, they didn't cure it. It still exists. In their brief, they say their patent allows for the introduction of red without substantial degradation. What is too substantial in one use? Helicopter pilots may not be too substantial in another use. This standard was clearly first developed for helicopter pilots. The key goal of the committee was, yes, all things being equal, we'd like to have red, but our key goal is as close to perfect goggle performance as we can get. Then, as the memo such as the July 1985 memo from the commander of tactical air in the Navy recognizes, Honeywell relies on it. After that, we're going to look at applying this standard to jet pilots and applying it to new technology. I think you've made your point. It's a sufficient answer. Thank you. We'll give you a few extra minutes since we've given them both more time than they asked for. Thank you, Your Honor. For starters, Honeywell is not looking to retry the case or ignore any factual findings. In fact, what we are asking is that the obvious determination be made on a fulsome, complete record as opposed to a selective view of the findings of fact, such as, for example, these indicia that show that jet pilots needed red and it was taken away from them, as well as Reitz's unsuccessful efforts and the other information. That's just not addressed in the CFC's opinion. We're not looking to do fact-finding. On the perceptibility issue, clearly no fact-finding. There is no evidence. Your Honor has asked counsel, is there any evidence of perceptibility? Clearly, and I think the answer came back, well, other people who were near skill in the art would know how to do it. Simple fact is there was no evidence put on of perceptibility with respect to them, with respect to Verney, or with respect to otherwise. The trade-off evidence is not perceptibility evidence, and the trade-off is adequately dealt with both by the secondary indicia and by the fact that this isn't simply a trade-off. This isn't dialing the thermostat. This is figuring out that if you want to have a warm room, but still not use as much heat, then maybe you make a more efficient room. Maybe you close off rooms in the house. Here what they did is they developed the idea, we're going to use this narrow band, we're going to isolate this area in the light source that has a perceptible region and focus on that perceptible region and only transmit that, getting the best of both worlds. It's not a trade-off at all. Second, Verney is an entirely different paradigm. First of all, there's no doubt it dims. There's no evidence to the contrary. Second, Verney doesn't even show complementary filtering because he wants the light to go through to the display. It's a whole different paradigm. It wouldn't work with complementary filtering. In fact, Joint Appendix 296, court's opinion, says it uses Verney as an example of complementary filtering when it clearly is not in task. Their expert admitted it unequivocally a trap. The CFC just didn't understand Verney. The idea that one of ordinary skill in the art would just know how to make BEM perceptible is undercut by the fact that they didn't. They took RED out. There was a clear, unescapable, unequivocal demand for that. Counsel's indication that the reason they did that is because the spec applied only to helicopters is flat out wrong, unsupported by the record. This spec applied to everything, jets and helicopters, and it took RED out for everybody over the clear, strenuous objection of the jet pilots. With regard to the notion that McClure was some functionary, he was the chairman of this committee. He was the guy that was invested with the power to review patent applications, and they would like to suggest that this was given to some administrative bureaucrat to undertake that function. He clearly reviewed the application. The application was not put under secrecy order because of vulnerability reasons. Those vulnerabilities are all over the prior art, including the Verney prior art itself. What we do know is from Joint Appendix 619924, which is the memo, and from the testimony of 30621 through 203 of the Joint Appendix, that this term, defining a narrow ban, never entered the government's vernacular until that meeting after McClure saw the Honeywell patent application. There's no indication. Thank you. Thank you. Case is submitted.